## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Cathy L. Waldor |
| | : | |
| v. | : | Mag. No. 17-7049 (CLW) |
| | : | |
| ANCHI HOU | : | CRIMINAL COMPLAINT |

I, Grace Taylor Shea, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent of the Federal Bureau of Investigation, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

Grace Taylor Shea
Special Agent
Federal Bureau of Investigation

Sworn to before me, and
subscribed in my presence

April 6, 2017 at
Newark, New Jersey

HONORABLE CATHY L. WALDOR
UNITED STATES MAGISTRATE JUDGE

Signature of Judicial Officer

**ATTACHMENT A**

**Count One**
**(Possession of Stolen Trade Secrets)**

Between in or about July 2016 and on or about December 5, 2016, Middlesex County, in the District of New Jersey, and elsewhere, defendant

**ANCHI HOU**

with intent to convert a trade secret to the economic benefit of someone other than the owner, knowingly and without authorization did possess one or more trade secrets belonging to E.I. duPont de Nemours and Company ("DuPont"), to wit documents containing proprietary scientific, technical, and engineering information pertaining to flexographic printing plate technology, such trade secrets being related to products and services used in and intended for use in interstate commerce, intending and knowing that the offense would injure DuPont and knowing that the proprietary information was stolen and appropriated, obtained, and converted without authorization.

In violation of Title 18, United States Code, 1832(a)(3).

**ATTACHMENT B**

I, Grace Taylor Shea, a Special Agent of the Federal Bureau of Investigation ("FBI"), having conducted an investigation and discussed this matter with other law enforcement officers who have participated in this investigation, have knowledge of the following facts. Because this Criminal Complaint is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### A.    Overview of the Investigation

1.    In February 2017, DuPont contacted the FBI to report suspicious activity by Anchi Hou, a 61-year-old male citizen of the United States who had been employed by DuPont since 1989. Specifically, DuPont reported that an internal investigation revealed that in the Fall 2016, after announcing he would retire by the year's end, Hou copied and removed thousands of files containing DuPont's proprietary information, including formulas, data, and customer information related to flexographic printing plate technology and took photographs in restricted areas of plant equipment and layouts used to manufacture DuPont's products. When questioned by one of DuPont's security personnel, Hou admitted he transferred the files to a thumb drive and then, in turn, copied the files onto a personal computer at his residence in order to assist him with his consulting business. On March 2, 2017, DuPont filed a civil action against Hou for stealing its trade secrets related to flexographic printing plate technology. On April 4, 2017, the FBI learned that Hou and his family had booked airline flights departing the United States.

### B.    Biographical Details

2.    Hou was born in Taiwan in 1955 and came to the United States in 1985 on a student visa. In 1993, Hou became a naturalized citizen of the United States. Hou received a bachelor's degree and master's degree in Chemical Engineering in 1977 and 1979, respectively, from National Taiwan University and received a Ph.D. in Chemical Engineering in 1986 from Penn State University. Hou currently resides in East Brunswick, New Jersey.

## C.    Hou is Hired By DuPont

3.       In 1989, Hou started working for DuPont as a Staff Research Engineer.   He remained a DuPont employee through December 21, 2016.

4.       Hou accepted employment with DuPont pursuant to a written Employee Agreement signed by Hou on November 14, 1989 (the "Nov. 1989 Agreement"), which agreement contained the following terms related to handling proprietary information:

> Unless [Hou] shall first secure [DuPont's] written consent, [Hou] shall not disclose or use at any time either during or subsequent to said employment, any secret or confidential information of [DuPont] of which [Hou] becomes informed during said employment, whether or not developed by [Hou], except as required in [Hou's] duties to [DuPont].

> Upon termination of said employment, [Hou] shall promptly deliver to [DuPont] all drawings, blueprints, manuals, letters, notes, notebooks, reports, and all other materials of a secret or confidential nature relating to [DuPont's] business and which are in the possession or under the control of [Hou].

On December 5, 2016, Hou reaffirmed his obligations to maintain the confidentiality of DuPont's proprietary information in a "Certification of Compliance with Employee Agreement" (the "Dec. 2016 Agreement"), including the following provisions:

> You agree that during and after the term of your employment, you will not directly or indirectly, use, cause to be used, or disclose any Confidential Information of which you become aware, except to the extent a particular disclosure or use is required under this Agreement or in the performance of your assigned duties while you are an employee.   You also agree not to remove any Confidential Information from DuPont premises in any form, such as documents, electronic storage media, material or equipment, except as required in the performance of your assigned duties, and to immediately return any such Confidential Information at the termination of your employment.

The Dec. 2016 Agreement defined "Confidential Information" to mean information "that is not publicly known" and to include, in part:

2

Intellectual Property . . . of DuPont, its customers, suppliers and partners; trade secrets; research initiatives and projects; manufacturing and research processes and methods; experimental and test results (whether successful or unsuccessful); computer software and code; data or information relating to any of DuPont's past, present or future products or services; mailing lists; cost and pricing information; the identity of existing or prospective customers or suppliers and information related thereto . . . .

### D.   DuPont's Flexographic Printing Plate Technology

5.    Hou worked on DuPont's flexographic printing plate technology, specifically a line of products sold under the brand name Cyrel®.   DuPont manufactures, markets, and supplies Cyrel® printing plates and equipment used to prepare, image, process, and develop flexographic printing plates for use by printers.   DuPont has spent years and invested substantial amounts of money to develop formulation technology and design manufacturing equipment and processes whereby it can produce high quality, reliable photo-polymeric plates for use in flexographic printing operations.   This information derives independent economic value and gives DuPont a competitive advantage because it is not generally known in the flexographic printing industry.

6.    Manufacturing high quality, reliable photo-polymeric printing plates for flexographic printing, the technology that is associated with Cyrel® printing plates, and the technology that allows the manufacture and production of Cyrel® printing plates, is highly complex and technical.   Such information includes, among other information, machinery, processes needed to manufacture Cyrel® printing plates, the specific configuration and design of the machinery, the proprietary uses and applications for Cyrel® printing plates, and financial and customer information related to Cyrel® printing plates.   Much of DuPont's information regarding Cyrel® printing plates is confidential, proprietary, and is comprised of trade secrets.   Much of this information is not available to the public and is not disseminated to anyone other than select employees of DuPont and third parties under a confidentiality agreement.

7.    DuPont's Advanced Printing Division business engages in research, development, commercialization, manufacturing, and production of DuPont's Cyrel® flexographic printing plate technology.   The main production facility for Cyrel® printing plates is in Parlin, New Jersey, while the management of DuPont's Advanced Printing business is located and run from Wilmington, Delaware.

3

### E.    DuPont's Protection of Its Proprietary Information

8.    DuPont implemented measures at the Parlin, New Jersey production facility – where Hou worked – to protect its proprietary information from unauthorized disclosure, including security guards, electronic perimeter controls and security cameras, background checks for employees, conspicuous posting of warning placards and copies of the applicable standards for securing proprietary information, restricting the use of cameras in sensitive areas, escorts for non-cleared personnel, access policies for computer networks, monitoring for malicious and/or suspicious activity occurring on DuPont's computer networks, and banners and legends alerting handlers of documents that they contain proprietary information.

9.    Furthermore, DuPont instituted a written Code of Conduct and required employees, including Hou, to familiarize themselves with it.   The Code of Conduct advised employees that:

It is critical that all employees protect company information that has not been made public. Non-public information that has economic value to the company is "trade secret" information. Examples of company trade secret information include the following when not public: business plans, pricing and cost information, research and development plans and strategies, research data and inventions, product formulas and ingredients, process and design information. "Inside information," discussed earlier, is another example of non-public, confidential information that must not be shared with others without specific authorization.

Employees must be aware of trade secrets and take steps to effectively protect those trade secrets by complying with the DuPont Trade Secrets Policy. Further, all employees must safeguard company non-public information from improper access, use, or disclosure by following DuPont [Information Security Organization] policies.   Trade secrets and other confidential information may be disclosed to others only under a written agreement, such as a confidential disclosure agreement, that remains in effect and applies to the disclosure. When disclosed to another party, confidential information and samples must be marked as "Confidential." Further, the disclosure must be limited to information necessary for the business purpose. Legal must review confidentiality agreements others provide to DuPont before an employee signs any such agreement or receives the related information.

4

10.    As recently as October 14, 2016, Hou certified his compliance with the DuPont Code of Conduct.

11.    In addition, DuPont provided Hou and other employees with periodic training and awareness materials concerning employees' obligations to secure DuPont's proprietary information from unauthorized disclosure. Specifically, on June 11, 2012, Hou completed a training program titled "Protecting DuPont Trade Secrets."

### F.    Hou Forms a Consulting Business Without DuPont's Knowledge

12.    At some point during 2016, Hou formed a consulting business called Gantac Associates ("Gantac").   Hou did not advise his supervisors at DuPont that he had formed this business.

13.    A partnership agreement for Gantac identified Hou and one other individual ("Individual 1") as the sole partners in this business.   The agreement provided that the partnership would be a "Consulting Service in Manufacturing Industry" and that Hou would contribute "scientific and engineering services" to the partnership while Individual 1 would contribute "scientific and legal services[.]"   The principal office for Gantac was Hou's residence in East Brunswick, New Jersey.   The agreement further stated that the partnership began on November 14, 2016.

### G.    DuPont Discovers Suspicious Activity by Hou

14.    On November 18, 2016, Hou informed DuPont he intended to retire by the end for the year.

15.    On December 1, 2016, a DuPont employee at the Parlin facility observed Hou taking photographs on his personal phone of equipment related to Cyrel® printing plate technology.   Hou's actions occurred in an area where unauthorized photography was prohibited due to the sensitive nature of the equipment and layouts.   Hou was confronted about this behavior and refused to divulge the contents of his phone when asked to do so.   Moments later he deleted them before providing his phone for inspection DuPont personnel.

16.    After this event, DuPont security personnel conducted an analysis of DuPont's computer systems, which analysis revealed that Hou had, since at least July 2016, repeatedly downloaded DuPont documents related to Cyrel® flexographic printing plate technology onto removable USB computer storage devices.

5

**H.    Hou Admits Transferring DuPont Files to His Home Computer for Personal Gain**

17.    On December 5, 2016, Hou was interviewed by security personnel at the Parlin facility.   During the interview, Hou admitted he downloaded files from DuPont's computer network onto a removable USB computer storage device and then uploaded them to a personal computer at his home.   Hou further stated that he took the documents in order to assist him with his consulting business.   Hou agreed to allow DuPont personnel to accompany him to his home in order to retrieve his personal computer.

18.    Hou further stated that any storage devices he used to extract and transport DuPont's files were at his home.   Hou agreed to allow a DuPont security professional to accompany Hou to his home to retrieve the devices and Hou's personal computer.   Before departing the Parlin facility, Hou was observed placing an item in his pocket near his work station, which item turned out to be a thumb drive.   Hou provided this thumb drive to DuPont personnel.

19.    Hou and the DuPont security professional went together to Hou's residence in East Brunswick, New Jersey.   While in transit between the two locations, according to the DuPont security professional, Hou stated that he should not have taken the files and apologized for his actions.   After arriving at the residence, Hou allowed the DuPont security professional into his home and led him to the second floor where Hou identified a "tower" computer as the computer onto which Hou had transferred DuPont's files.   Hou then allowed the DuPont security professional to remove the computer from the residence. Hou did not provide DuPont with any other devices.   Later that day, Hou signed documentation attesting that he had returned to DuPont all files containing the company's proprietary information.

**I.    DuPont Discovers Thousands of Proprietary Files, Including Trade Secrets, on Hou's Personal Computer**

20.    DuPont personnel conducted a forensic review of Hou's personal computer, which review revealed over 20,000 DuPont files related to Cyrel® flexographic printing plate technology.   According to DuPont, these files include those containing information that DuPont considers to be trade secrets on the basis that the information: (i) is or has been used by DuPont in its business operations; (ii) is critical to the technical and economic aspects of DuPont's Cyrel® business; (iii) was established through DuPont's skill, judgment, and labor; and (iv) is available only to DuPont or those who are given the information under the protection of confidentiality agreements.   Moreover,

6

the files detected on Hou's personal computer contain information that would provide DuPont's competitors with technical and economic advantages, including:

- The Cyrel® Manufacturing Technology Package, a lengthy document that outlines the entirety of the process used to manufacture Cyrel® printing plates, including highlights the drawings, calculations, and technical material used in the manufacture of Cyrel® printing plates;

- "Basic Data" documents that reveal confidential and proprietary information related to the equipment and processes used in the manufacturing of Cyrel® printing plates;

- "Standard Operating Condition" documents that reveal confidential and proprietary information related to the equipment and processes used in the manufacturing of Cyrel® printing plates;

- Specifications describing chemicals used by DuPont in the operation of DuPont's process for creating Cyrel® printing plates;

- Photographs of the equipment used in the Cyrel® printing plate manufacturing process, many of which reveal confidential and proprietary information related to the equipment and processes used in the manufacturing of Cyrel® printing plates;

- Formulations for the photo-polymeric printing plates used in the Cyrel® manufacturing process;

- Market and customer information related to the flexographic printing plate business, including extremely sensitive customer information on the most-recent Cyrel® products; and

- Process production documents, batch sheets, equipment designs and research documents related to the Cyrel® manufacturing process.

21.    According to DuPont, several of the documents located on Hou's personal computer were apparently removed from an electronic repository of some of DuPont's most sensitive trade secret information, that the company refers to as its "secure vault."

**J.     Hou's Activity Was Unauthorized and Inconsistent with His Work Responsibilities**

22.     The FBI has interviewed Hou's supervisors, and there is no indication that Hou sought or received permission to transfer thousands of proprietary files to his personal computer for any reason, let alone for use in his consulting business.   Furthermore, according to DuPont personnel in Hou's supervisory chain, Hou's activities were curtailed in the months prior to his departure from DuPont in December 2016.   Accordingly, Hou did not have any work requirement related to most aspects of Cyrel® flexographic printing plate technology.   Throughout the Fall of 2016, and in November and December 2016, Hou's activities were limited such that he was only working on one small project related to a filter on one of the Cyrel® manufacturing lines. As such, the files taken by Hou far exceeded those that related to his job responsibilities at the relevant times.